UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CR-035-CVE |
| | ) | (22-CV-402-CVE-CDL) |
| TYMALK LAQUANE LOVE, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Now before the Court is defendant's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. ## 151, 153, 155). Under 28 U.S.C. § 2255, "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." Defendant's § 2255 motion asserts two grounds for relief challenging his conviction and sentence. Dkt. ## 151, 153, 155. Plaintiff has filed a response (Dkt. # 160) and defendant has filed a reply (Dkt. # 165), and defendant's § 2255 motion is ripe for adjudication.

**I.**

On March 3, 2020, a grand jury returned an indictment (Dkt. # 2) charging defendant with drug conspiracy, importation of a controlled substance, and smuggling goods into the United States. Defendant was not arrested on these charges until June 2020, and he made his initial appearance before a magistrate judge on June 22, 2020. The magistrate judge found that defendant was unable to afford counsel and appointed William Widell to represent defendant. Dkt. # 8. Widell later withdrew from his representation of defendant due to a conflict of interest, and Jimmy Lance

Hopkins was appointed as substitute counsel. A grand jury subsequently returned a superseding indictment (Dkt. # 19), a second superseding indictment (Dkt. # 46), and a third superseding indictment (Dkt. # 59) adding two new defendants and many additional charges. The third superseding indictment charged defendant, Anthony Ward Irving, and Casey Joe Eastwood with drug conspiracy (count one). Love was also charged with drug conspiracy (count two), importation of a controlled substance (count three), smuggling goods into the United States (count four), unlawful use of a communication facility to cause or commit a drug trafficking crime (counts five through twenty-seven), and possession of a firearm in furtherance of a drug trafficking crime (counts thirty-five and thirty-six).[1] The third superseding indictment alleges that Love, also known as "Loom," was an inmate in a facility operated by the Oklahoma Department of Corrections (DOC), and Love allegedly used cellular telephones to manage to manage drug shipments and money transfers while he was incarcerated. Dkt. # 59, at 3-5.

Hopkins filed a motion in limine (Dkt. # 66) asking the Court to exclude at trial evidence of Love's gang affiliation. Before the Court could rule on the motion, Michael Arnett entered an appearance as retained counsel on behalf of Love, and Hopkins withdrew from his representation of defendant. Dkt. ## 69, 71. Irving and Eastwood both entered guilty pleas with plea agreements, and Love was the sole defendant remaining for trial. The Court twice reset the sentencing hearings for Irving and Eastwood after the filing of sealed motions by plaintiff. Dkt. ## 97, 98, 105, 106. A pretrial conference was set for June 9, 2021 and, at the pretrial conference, defendant announced that he intended to accept the most recent plea agreement offered by plaintiff. Dkt. # 111. The parties

---

[1] Counts twenty-eight through thirty-four of the indictment charged Eastwood with using a communication facility to cause or commit a drug trafficking crime. Dkt. # 59, at 15.

negotiated a Fed. R. Crim. P. 11(c)(1)(C) plea agreement (Dkt. # 116), under which defendant would plead guilty to counts two and thirty-five of the third superseding indictment and defendant would receive a sentence of 120 months. Dkt. # 116, at 14. The parties stipulated that 60 months of the sentence would be served consecutively to any other term of imprisonment imposed because, under 18 U.S.C. § 924(c), defendant's plea of guilty to count thirty-five would subject him to a statutory mandatory minimum sentence of 60 months that must be ordered to run consecutively to any other sentence imposed. Id. Plaintiff agreed to dismiss all other pending charges against defendant, and plaintiff also agreed to refrain from further prosecution of defendant based on the conduct giving rise to the charges in this case. Id. at 10. A change of plea hearing was set for later the same day to give defense counsel time to meet with defendant and prepare the necessary documents. Dkt. # 111.

At the change of plea hearing, Arnett advised the Court that he had been "meeting with [defendant] pretty much continuously" since the pretrial conference and he had thoroughly reviewed the plea agreement with defendant. Dkt. # 158, at 2-3. Plaintiff's counsel also provided a detailed overview of the plea agreement on the record during the change of plea hearing. Id. at 6-8. The Court asked defendant if he had been known by any names other than his legal names, and he stated that he went by the nickname "Loom." Id. at 9. Defendant advised the Court that he had an opportunity to review the plea agreement with his attorney, and he understood the terms of the plea agreement. Id. at 12. Defendant also stated that he was pleading guilty of his own free will. Id. The Court reviewed the potential consequences of a guilty plea with defendant, including imprisonment, fine, supervised release, and forfeiture. Id. at 13-17. The Court read counts two and thirty-five of the third superseding indictment on the record, and asked defendant to explain in his

own words how he committed these offenses. Id. at 25-26. Defendant consulted with his attorney and agreed to answer questions about the charges, and the Court asked defendant questions going to the essential elements of the charges. Id. at 27-30. As to count two, defendant admitted that he agreed with at least one other person to distribute fentynal, and he knowingly and voluntarily involved himself in the conspiracy. Id. at 28. Defendant was incarcerated in a facility operated by the DOC when the offense was committed, but he used a cell phone to communicate with his coconspirators. Id. As to count thirty-five, defendant admitted that one of the members of the conspiracy identified as "the facilitator" possessed a firearm in furtherance of the conspiracy. Id. at 29. Defendant also acknowledged that it was reasonably foreseeable to him that the coconspirator would possess a firearm in furtherance of the drug trafficking crime, although he initially seemed somewhat hesitant about this issue. Id. at 30. The Court made the following inquiry to ensure that defendant was clearly admitting that a coconspirator possessed a firearm in furtherance of a drug trafficking crime:

> **THE COURT**: Do you understand that you are admitting that even though you were in the [DOC] and these other co-conspirators were working outside the jail, the prison, you involved yourself in a federal drug conspiracy, you had co-conspirators that are identified, both known and unknown to the grand jury, identified in the third superseding indictment in Count One, and that you have to tell me under oath that it was foreseeable to you that one of your conspirators would possess a firearm in furtherance of this crime either for self-protection or protection of the drugs and/or the money?
>
> **THE DEFENDANT**: Yes.

Id. The Court advised defendant that he was changing his plea pursuant to a plea agreement under Fed. R. Crim. P. 11(c)(1)(C), and he would receive a 10 year sentence if the Court accepted the plea agreement at the sentencing hearing. Id. at 31. Defendant stated that he understood that he would receive a 10 year sentence, but he would be given an opportunity to withdraw his plea if the Court

chose to reject the plea agreement. Id. at 32. The Court accepted defendant's guilty plea and set the sentencing hearing for September 15, 2021.

The probation officer prepared a presentence investigation report, calculating a total offense level of 35 and a criminal history category of VI. This resulted in an advisory guideline range of 292 to 365 months. However, the statutory maximum sentence for count two was 240 months, and the guideline sentence for count thirty-five was a sentence 60 months consecutive to any other sentence imposed. To accept the plea agreement, the Court was required to vary downward 17 levels as to count two to reach a total offense level of 18. At the sentencing hearing, the Court accepted the plea agreement and varied downward 17 levels to impose a sentence of 60 months as to count two. The Court entered a judgment and commitment (Dkt. # 130) sentencing defendant to a total term of imprisonment of 120 months. Defendant received a sentence of 60 months as to count two, followed by a consecutive sentence of 60 months as to count thirty five. Defendant did not file a direct appeal, and his convictions and sentence became final on September 30, 2021. On September 15, 2022, defendant filed a § 2255 motion to vacate his conviction as to count thirty-five. Dkt. # 151. Defendant has also filed amended § 2255 motions (Dkt. ## 153, 155) explaining his ineffective assistance of counsel claims in greater detail. Defendant's initial motion (Dkt. # 151) is a placeholder motion filed to ensure that defendant did not miss the statute of limitations for filing a § 2255 motion, and his additional filings (Dkt. ## 153, 155) supplement the claims raised in his initial motion that was filed within the one year statute of limitations. Therefore, the Court will treat the additional filings as amendments or supplements to his original motion, and it is not necessary for the Court to consider whether the additional filings are second or successive § 2255 motions.

**II.**

Defendant's § 2255 motion asserts two claims of ineffective assistance of counsel, although the claims substantially overlap and are effectively a single ineffective assistance of counsel claim. Defendant argues that Arnett "directed me to plead to charges that do not have any reliable evidence," and he claims that Arnett failed to conduct a reasonable investigation into the charges against defendant. Dkt. # 153, at 4. In a separate claim, defendant argues that Arnett "failed to attempt even the slightest to investigate 924(c)(1)(4)(i) charge." Id. at 5. Plaintiff responds that defendant was not prejudiced by Arnett's allegedly deficient performance, because he does not allege that he would have gone to trial on all charges against him and accepted the risk of a sentence substantially higher than 120 months. Dkt. # 160, at 15. Plaintiff also argues that there was strong evidence supporting defendant's guilty plea as to the § 924(c) charge, and defendant cannot show that Arnett's advice to plead guilty pursuant to the plea agreement was unreasonable.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance." Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance. See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

Defendant relies on select evidence from the record in an attempt to establish that he was not "Loom," and he argues that there was no evidence supporting a finding that he constructively possessed a firearm as alleged in count thirty-five. Defendant states that the magistrate judge questioned whether defendant was "Loom" at his arraignment, and he claims that the question implies that there was a lack of evidence establishing that he was actually "Loom." Dkt. # 155, at 6. Defendant claims that one of his co-defendants, Eastwood, was interviewed by the Oklahoma State Bureau of Narcotics and Dangerous Drugs, and Eastwood stated that he had never met the people identified any of the indictments in this case. Id. at 7. Eastwood could not identify defendant in a photo lineup, and defendant claims that this is evidence showing that he is not "Loom." Id. Defendant cites the grand jury testimony of Nobrai Lyons and claims that plaintiff's counsel Thomas Duncombe personally questioned whether defendant was actually "Loom." Id. at 8. Defendant further claims that Lyon's grand jury testimony does not show that defendant ever directed her to possess a firearm in furtherance of a drug trafficking crime. Id. at 10. Defendant also alleges that

7

the phone used to text Lyons was never found and he was in DOC custody when the text messages were sent to Lyons. Id. at 11.

The Tenth Circuit has stated that district courts are "free to address these two prong [of an ineffective assistance of counsel claim] in any order," and the Court can proceed directly to the prejudice prong on defendant's ineffective assistance of counsel claim. Ellis v. Raemisch, 872 F.3d 1064, 1086 (10th Cir. 2017). Plaintiff asks the Court to consider the prejudice prong before reaching the issue of deficient performance, because defendant does not actually state that he is prepared to go to trial on all charges alleged against him in the third superseding indictment. It appears that defendant is asking the Court to vacate his conviction as to count thirty-five only while he receives the benefit of the plea agreement, and defendant seems to think that the Court will leave in place his 60 month sentence as to count two if defendant is permitted to withdraw his guilty plea to count thirty-five. That outcome is not possible in this case, and defendant would face significant adverse consequences if the Court were to vacate defendant's conviction as to count thirty-five. Defendant would be in breach of the plea agreement if he were permitted to withdraw his guilty plea to count thirty-five, and the Court would be required to reinstate all charges in each of the indictments against defendant. United States v. Lewis, 138 F.3d 840, 842-43 (10th Cir. 1998). Defendant does not state that he intends to proceed to trial on all charges against him, nor does he state that he is willing to accept the risk of a higher sentence if the Court were to grant defendant the relief he seeks. Plaintiff notes that defendant's sentence would have been substantially higher if he had pled guilty without the plea agreement, and his sentence would have been even higher if he had been convicted of counts two and thirty-five at a jury trial. Defense counsel negotiated a plea agreement under which defendant would receive a sentence of 120 months in exchange for pleading guilty to counts two and

thirty-five, and this sentence is substantially lower than the advisory guideline range for even count two by itself. Arnett's representation of defendant resulted in a favorable outcome for defendant in light of the significant punishment he faced if he had proceeded to trial or pled guilty without the plea agreement, and there is no basis for the Court to find that defendant was prejudiced by defense counsel's conduct.

Defendant has also not adequately alleged facts supporting his claim that defense counsel's performance was deficient, and there would be no basis for the Court to set this matter for an evidentiary hearing on defendant's claims of ineffective assistance of counsel. Defendant now claims that there is no evidence that he was the person known as "Loom," but he admitted this fact under oath during his change of plea hearing. The evidence cited by defendant to contradict his admission is selective at best, and does not tend to show that defense counsel failed to conduct an adequate investigation before advising defendant to accept the plea agreement. Defendant argues that plaintiff failed to present evidence at his arraignment establishing that he was "Loom," but plaintiff had no obligation to produce evidence of defendant's guilt at the initial appearance or arraignment. Defendant claims that one of his co-defendants, Eastwood, could not identify defendant in a photo lineup. However, Eastwood told investigators that he had never met or spoken to Loom, and he communicated with Loom solely using text messages. Dkt. # 155, at 18. Finally, defendant claims that plaintiff's counsel questioned whether defendant was "Loom," and he claims that the grand jury testimony of Lyons does not show that he directed her to possess a firearm. The grand jury testimony cited by defendant does not show he ordered or commanded Lyons to carry a firearm, but it clearly shows that defendant was aware that she possessed a firearm to protect herself or her property during illegal drug transactions and that he encouraged her to possess a

firearm in furtherance of a drug trafficking crime on at least one occasion. Dkt. # 155, at 20-24. Defendant's arguments do not show that Arnett unreasonably advised defendant to plea guilty pursuant to the plea agreement or that Arnett conducted an inadequate investigation. Instead, the record shows that defendant admitted under oath that he was "Loom," and the transcript of the plea hearing shows that defendant made a knowing, voluntary, and fully-informed decision to change his plea to guilty. Defendant has failed to establish either prong of an ineffective assistance of counsel claim, and his § 2255 motion is denied.

The Court must also consider whether to issue a certificate of appealability (COA) on any issue raised in defendant's § 2255 motion. Pursuant to 28 U.S.C. § 2253, a defendant is required to obtain a COA before appealing a final order in a proceeding under 28 U.S.C. § 2255. Section 2253(c) instructs that the court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A defendant can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). After considering the record in this case, the Court concludes that a COA should not issue because defendant has not made a substantial showing of the denial of a constitutional right. The Court does not find that the issues raised by defendant are debatable among jurists or that the Tenth Circuit would resolve the issues differently, and defendant has not made a substantial showing of the denial of a constitutional right.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. ## 151, 153, 155) is **denied**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that the Court declines to issue a COA on any issue raised in defendant's § 2255 motion, because defendant has not made a substantial showing of the denial of a constitutional right.

**DATED** this 28th day of August, 2023.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE